The United States Court of Appeals for the Ninth Circuit is now in session. All right, good afternoon and welcome to the Ninth Circuit hearing argument remotely by Zoom. I can see everyone's squares and the clock and Mr. De La Torre and Mr. Anderson, can you both hear me? Yes, Your Honor. So, my name is Bridget Beattie. I have my chambers here in Phoenix. I'm very pleased today to be sitting with senior judges Michael Hawkins and Rick Clifton. Judge Hawkins is here in Phoenix and Judge Clifton is in Hawaii. We have set the time for 15 minutes per side this afternoon, but you are not required to use all of that time. We wanted to give you sufficient time because the case raises some important jurisdictional issues, but don't feel as if you need to use the entire time if you feel that you've made all the points you want to make and we've stopped asking you questions. Mr. De La Torre, whenever you're ready to proceed, please go ahead and do you wish to reserve some time for rebuttal? Yes, Your Honor. We would like to reserve four minutes. Please watch the clock. Thank you, Your Honor. First of all, good afternoon, judges. May it please the court, Salvador De La Torre Jr. for the petitioner, José Guadalupe Navarrete. I'll begin with our idea of the case summary. We believe that the court should remand the case and we base that belief on the development of the record. The missing facts are leading us or unable to lead us into whether the government acquiesced in its harm, but before we get there, the court must decide whether it has jurisdiction. We believe that in this case, in the initial onset, it wasn't as complicated as it is now. Before Riley, the government and the petitioner both agreed that the petition for review was timely and that it was submitted to the court at the proper moment. Post Riley, we are now tasked with the questions whether the court has jurisdiction and whether the petitioner has waived his ability to seek review based on not challenging the final order of removal. We would argue that he has challenged the final order of removal. We would argue that in our initial brief before Riley, that was the understood way of challenging your final order of removal. Again, as noted in the opening brief for the respondent, they noted the immigration judge's decision becomes the final agency decision. This is also provided to us by Andrade V. Garcia. Post Riley, Justice Thomas in his concurrence argued that the Fourth Circuit may not have jurisdiction to hear the challenge or the did not expressly challenge his final order of removal. The final order of removal was issued in this case a year prior to Riley being decided. The final order of removal, according to the Supreme Court in Riley, in this case was issued in January of 2024. So, Mr. De La Torre, I appreciate that it seems that the landscape has changed while this petition has been pending and being litigated. You've mentioned Riley. There was also the earlier decision in Nasrallah and Monsalvo where the court has raised this issue of whether an order denying relief under the Convention Against Torture or CAT is a final order. So, it has been something the Supreme Court has been discussing before Riley and not just in the concurrence of Justice Thomas. What I'd like to know from you is what is it that you consider the final order of removal in this case? From what you just said a moment ago, I think you were saying the January order of reinstatement, reinstating the earlier order of removal. According to Justice Thomas, Your Honor, that's what he would have us believe. For our position, we would argue that the final order is issued once the conclusion of the reasonable fear review hearing is met. Once the judge orders whether he is denied or affirmed or vacated on that decision, that should be the final order of removal. So, what you're arguing is the denial of CAT relief, that that order becomes the most logical way of deciding a case. I think it is highlighted in Justice Sotomayor's dissent, where she clearly states in her dissent that the illogical way of deciding Riley makes the respondents in those cases petition twofold. It bifurcates the case into challenging the final order of removal prior to a decision in the case and also challenging the decisions of the case. You're talking about Riley, but if you go back to Nasrallah, which was decided in 2020, the court defined the final order of removal as the order concluding, and I'm quoting here, concluding that the alien is deportable or ordering deportation, and then also held that a CAT order or order denying CAT relief did not merge into the final order of removal. So, this has been, you know, nearly six years now that this has been the court's holding that that is what a final order of removal is. I don't think it's just Justice Thomas's concurrence and Riley or that Justice Sotomayor's dissent changes what's now a pretty well-established precedent. And again, Judge, if the court were to take that position, our argument is that we nonetheless should be able to merit at least passing the threshold for the petition for review if the court found... So, it was pretty clear that what Mr. Navarrete challenged was the denial of CAT relief. Correct. And I appreciate your comments that when you said a few times in your briefs, we're not challenging the reinstated removal order, and the government also said in their brief that the order denying CAT relief was the final order, that both of you are now arguing you should not be bound by those statements because they were pre-Riley. But is there some basis with Nesralla, Monsalvo, Riley, all of that case law exists that we could find that something other than the reinstated removal order is the final order? Again, the court can look into FARA, whether it has jurisdiction to hold the petition for review. There is precedent stating that the final order removal comes at the initial determination of the alien being removable and that issue being ordered. But if we follow in with that case, what we're doing is we're bifurcating the cases. We're having to appeal a decision that necessarily most people wouldn't make because it's a decision that if they waive and they don't appeal, they're never going to get into a judicial review for their merits of the case. Didn't the court address that in Riley, what the parties had raised as a practical difficulty and said that the government could advise petitioners that they need to appeal from the final order of removal and then advise the court of appeals that there's a challenge or request for CAT relief pending before the agency? That is correct, Your Honor, and that hasn't the court should dismiss the petition for review, then the case in which notice was not given and the department didn't follow through with either of those tasks, then the Fifth Amendment is also at risk of losing its protections. It sounds like what you want is for us to remand this to the agency and so you can challenge the reinstated removal order. But on what basis could you challenge that order? What basis exists? I didn't see anything in your brief making this argument, but also what would be the claim to challenge the reinstated order? And that would be, again, the red herring, I would argue in the case, Judge, is that people would be challenging the final orders of removal without merit and they wouldn't be doing it because they don't want to appeal. It would be more than preserving their right to appeal the merits of their case in the future. All right, so that sounds like you're sort of leaning into the argument from the AMICA group that Mr. Navarrete should be allowed to have a remand and then assert a frivolous claim. And I would be leaning into that argument, but I would also argue that the court is allowed to hear those arguments because it's also not only deciding whether the petitioner's claim has merit, but also the court's jurisdiction. And the court needs to own jurisdiction on all the claims. Sure. And if it is our conclusion that we don't have jurisdiction because you haven't challenged a final order of removal and all the statutes give us jurisdiction over a final order of removal, you think that we can make that determination retrospective rather than retroactive? In other words, that we could say we had jurisdiction in the past, but we don't have it now? I believe after Riley was decided, I believe that that's when the courts are applying it. I don't think it would be able to be applied retroactively because if that were to happen, then everybody would lose their preservation of a right to appeal. And that'd be because they didn't appeal the final order of removal, which would have happened a year or more before their case even was adjudicated. You're getting close to the time you wanted to reserve, but I've been monopolizing the time, so I want to make sure my colleagues have a chance to ask you questions if they wish to do so. My question is, this is a standalone petition for review of a reasonable fair determination, is that right? That is correct, Your Honor. And you want to be able to assert this in this posture independent of 18 U.S.C. 1252? No, what we would be arguing is that 18 1252 is satisfied by petitioning now for review of the reasonable fair review. And previously, because it joins into the challenge to the court's order. So post Riley, what the court would have us do is lose that right to appeal because we didn't challenge the final order of removal. But what we're arguing is that because we did challenge it in the beginning, because that was the established practice of how you challenge the final order of removal, we shouldn't lose that right. And it should be zippered into or joined into the final setting, which is the reasonable fair review hearing. So you think they've merged? Correct. Okay, I understand your argument. Any other questions, Your Honors? No, thank you. And we'll reserve the balance of your time for rebuttal. Thank you, Judge. Good afternoon, Your Honor. Eric Anderson representing the Attorney General. The relevant facts in this case can be stated very simply, very quickly. Mr. Navarrete was lawfully removed to Mexico in 2003. He illegally returned. DHS took the steps to reinstate that prior order in 2024. He did not file a petition for review within 30 days of that reinstatement. Instead, he went through his reasonable fear proceedings, which were completed when an asylum officer found that he did not express a reasonable fear of persecution or torture in Mexico. An immigration judge agreed with that determination. We would ask the court to dismiss the petition for review for the reasons stated in our supplemental brief or alternatively deny it for those stated in our original answering brief. And so the original answering brief, you acknowledge this court had jurisdiction. Is that correct? That's right. The precedent said yes, Your Honor. The world turned upside down with Riley. So everybody, including the government, indeed, the government's position in front of the Supreme Court in Riley was different from what the Supreme Court came out with. And so now we're all looking at the new landscape. And I understand that's the force of your argument with regard to the supplemental brief argument. But isn't it the case, and shouldn't that be something we recognize, that in fact, based on the common, perhaps universal understanding at the time that this petition was filed, this court had jurisdiction over it? Well, I'm not sure about universal, Your Honor. Certainly in this court, and I would certainly say the majority of courts. Fair enough. And so everybody's understanding has changed. Now, I understand we're all bound by the Supreme Court's decision in Riley. But I think that puts a different texture that we need to consider. It may well be that in the face of Riley and other Supreme Court decisions, the question now needs to have a different answer. But I think we also need to recognize that at the time this petition was filed, there was no apparent defect. Now, government has waived the 30-day time deadline, but I presume has not waived the possibility of the failure to challenge the final order of removal in its own terms, and has not waived the deadline in connection with a potential amended petition that could at least make a stab at challenging that final order of removal. And my question is, what's the difference? The difference between waiving the 30-day deadline and waiving his ability to amend the petition, Your Honor? Which is another 30-day problem, but yes. Well, the first thing we would is that Mr. Naboriti himself, until the argument today, never asked to amend his petition. Amicus, in their brief, for reasons we've, although we've opposed, but they're the ones who have introduced this idea. I think you want us to entertain that. You don't want us to issue a decision which says, well, disregarding these other arguments, which may come up in a future case. I mean, we're not really here focused purely on this petitioner's case. We're making a broader statement, and you're asking us to make a broader statement. So I don't know that you really want us to disregard the alternative arguments made by Amicus, do you? Well, formally, Your Honor, I think I have asked you to disregard them. I know you have, but I have to ask, do you really want that? Because do you want a decision from this court that says, well, disregarding these other arguments that can be brought up in a future case, in this particular case, petitioner loses. You want something more than that. Sure, Your Honor. I mean, there are plenty of occasions where courts decide smaller, lesser, unpublished issues. I don't suspect that's where this is going, but it happens. And if the court determines to address a larger issue in something that's going to control in future cases, then I'm ready to talk about it. And it appears to be purely an issue of law here. You've made the observation that there has been no request by this petitioner, but you've noted the request could be made, and that possibility has been raised by Amicus. So it's not like it's not on the table, or you haven't had an opportunity to speak to them. That's right, Your Honor. That's right. I'm not being surprised here, yes. But can I ask you, what would be the, suppose we thought, well, you know, this landscape has changed, this seems unfair, and we were to remand and allow a petitioner to file something before the agency to challenge the reinstated order of removal. What are the grounds, I mean, what basis is there for a petitioner to challenge a reinstated removal order? Yeah, well, to take it in that order, but I'm going to come back to a procedural point. But the three issues in reinstatement are, is this an alien who was ordered removed and removed, who illegally reentered? Those are the issues to be resolved in a reinstatement challenge. Now, the fact is, a remand would not provide him, Mr. Navarrete, any additional chance to challenge that. The immigration judge or the asylum officer hearing the reasonable fear do not review any aspect of whether the reinstatement was proper. That's one of the reasons why the reinstatement was final on the day it was issued in January 2024. Is there any way that he could go back and challenge the original 2003 removal order? There's quite a lot of these questions have multiple parts, and the answer is no, for several reasons. The reinstatement statute says the prior order is not subject to being was an expedited order under 8 U.S.C. 1225. That is not reviewed in the court of appeals. The only judicial review of that order would have been by a habeas action in district court, which is extremely limited to the issues of, is this an alien? Is there something that purports to be an expedited removal order? And is he an asylee or a refugee or a lawful permanent resident? Those three very narrow issues are the only thing that could have existed in 2003 and cannot exist now that the order has been reinstated. So I'm trying to get a sense of, you know, how much of a sea change this would be if we were to conclude that following Ms. Rolla, Riley, a standalone challenge to an order denying cat relief, that's not a final removal. We don't have jurisdiction. So how often would this come up? Presumably if you have a petitioner who's sought asylum, withholding, cancellation, cat, all various forms of relief, and they're challenging the order of removal, we wouldn't have this issue because the cat claim would be essentially to the order of removal. Here, you've mentioned Mr. Navarette had an expedited removal order back in 2003. And then now he has a reinstated order and where he made a claim of reasonable fear that was denied. So is it just that category where a standalone cat claim would exist? Or is this something that's going to have huge impact and going to affect thousands and thousands of cases? I am not prepared to offer a number, but I would agree with the sort of taxonomy. There's removal cases that begin with a notice to appear under 8 U.S.C. 1229A. They go before an immigration judge who resolves all issues of removability and relief. It's appealed to the Board of Immigration Appeals who resolves it all. And then a petition for review to this court. We would not be making this argument in that case. We think it is only in the case of administrative orders, which are either 8 U.S.C. 1228, which is a final administrative removal order for certain aggravated felons, or the 8 U.S.C. 1231A.5, which is the reinstatement we have here. They both go through this bifurcated system where DHS determines removability or reinstates the prior removal order. And then the reasonable fear process begins, where an asylum officer says yes or no. He can appeal that to an immigration judge who says yes or no. The most that could happen is that he would, if he prevails, he goes into withholding proceedings before an immigration judge. It's in that bifurcated system that we think Justice Thomas' arguments are, I wouldn't call them arguments, observations are completely valid. The statutes say you can only review the CAT order along with or as part of or in judicial review of a final order. I want to stay out of the potential merits of the argument because before Riley, this case would have been taken up by this court and would have been resolved based on the particular of this case. And it may well be that petitioner doesn't have a winning argument. And indeed, you presented the reasons in your original brief as to why there wasn't a winning argument and suggested the case should be submitted without oral argument, a request which you withdrew recognizing the broader significance of the case now. But I'm sitting here looking basically you're handing us the separate concurring opinion in the Riley case by Justice Thomas, an opinion which was joined by no other justice of the court. And I can't help but wonder, what does it mean that the rest of the court and no other justice of the court joined or adopted that reasoning? Are you saying that the court went ahead and processed the Riley case and remanded to the Fourth Circuit for a futile exercise? Are they engaged in exercise of futility? Are they obligated to take up jurisdiction first? And if Justice Thomas is correct that the Supreme Court lacked jurisdiction, that any court lacked jurisdiction, why did not any other justice comment on that? Your Honor, of course, a concurring opinion doesn't bind this court, but the statutes do. And the statutes set out the extent of the court's jurisdiction. And the other justices had an opportunity to join that decision or join that reasoning and conclude that they lacked jurisdiction over this case, but they didn't do that. So why should we assume that the other justices tacitly said, yes, we agree with him, but we're going to waste everybody's time by remanding to the Fourth Circuit? Well, Your Honor, I think the majority that governs here is the Congress that passed FARA and the immigration. But the Supreme Court hasn't said the interpretation you're trying to offer in which the government itself hadn't previously asserted. So why should we be overwhelmed by that logic if the government itself didn't discover it until after Riley was decided? We invite you to join us in discovering the consequences. I invite you to join us in considering the alternative, which we've started with the point that this is plainly unfair because at the time this petition was filed, it followed the process that the government itself agreed was the way to go for this court to be able to review this case. And now you're inviting us to join a process which will result in that unfair result for no reason other than the fact that Justice Thomas happened to make the observation in a separate concurring opinion that was joined by no other justice. Why should we do that? Well, Your Honor, I think the fairness here is resolved by considering open cases versus final cases. Nobody is asking this court to go back to closed cases to reopen them in order to apply this rule. A petitioner can't go back in time and file the petition you needed to file in order for this court to be able to entertain it. So what is fair about that? The government doesn't disagree with the approach taken by a petitioner. Only now the rug's been pulled out from under and you're saying it's the petitioner that should suffer. No, it may not really matter in this case. I understand that. We're not arguing the facts of this case. We're arguing or considering what the rule should be, who gets to have their case heard by a court. And I suspect there are petitioners out there that will be affected by this decision who may have stronger cases to offer on the merits perhaps than this petitioner. Why aren't we being unfair by closing our ears to those arguments? Your Honor, I think the obligation is when the highest court decides an issue of what the statute means, it controls in all open cases. And there are Supreme Court cases cited in our brief saying reliance on prior contrary precedents does not justify an excuse or an exception. So you're accepting the unfairness and just saying that's how it is. I'm saying, Your Honor, that Congress established the jurisdiction and although it certainly will leave some parties unhappy about the outcome that we're just applying the statutory limits of the jurisdiction. I can't help but be reminded of one of my favorite movie scenes and you may not be quite as old as I am, but Animal House featured the seniors having borrowed the car owned by the freshman's brother and they trashed it and they bring it back and the freshman says to them, what am I going to tell my brother? You've ruined it. And the seniors say back to him using a different word that I'm about to use, hey, you messed up, you trusted us. So even the government agreed the system, the process applied by the petitioner and filing the petition for you, this court was how it was under the precedent of this court. And the mistake made by petitioner was entrusting us. Okay. Well, when was the petition filed? May 1st of 2024, Your Honor. Okay. So that's four years after Nisrala was decided. Nisrala was decided in 2020. And so even if we were to conclude that this is only a fanciful notion by Justice Thomas in a concurrence, in Nisrala, the Supreme Court said in the majority multiple times, we hold that an order denying cat relief is not a final order of removal. And also it doesn't merge. That was the issue in Monsalvo and Nisrala. And the court said it does, that type of order does not merge into the final order of removal. And then you have FARA and Aurelia and they both say courts of appeals only have jurisdiction over final order of removal and jurisdiction over cat order, denial of cat relief. It says, let me see, let me find FARA. Nothing in this section shall be construed as providing any court jurisdiction to consider or review claims raised in this convention, the convention, the convention gets tortured, or this section, et cetera, except as part of the review of a final order of removal. So it has to be, we can only see it. I mean, it's pretty clear and it has been for a very long time that the court of appeals, we only have jurisdiction to review a final order of removal. And for years before this petition was filed, the court has said that's not a cat order. I don't, I think in fairness that to the petitioner, it didn't come in quite as sharp a focus as it has now. But I guess the question is, is there a way around what FARA provides for our jurisdiction, what 1252 provides for our jurisdiction and how the Supreme Court has defined a final order of removal? I don't think there is, Your Honor. I cite Nunez-Ray as an en banc decision of this court, which says jurisdictional holdings always have to be retroactive because otherwise you're exceeding the limits that Congress put on you. I see I'm- We have taken you over time, but I want to make sure my colleagues have an opportunity if they want to ask you anything else. Okay. All right. Thank you. And Mr. De La Torre, you only had a couple of minutes, but we took Mr. Anderson over, so I'll give you, let's see, you're almost at three, how about four minutes for rebuttal? Thank you, Your Honor. I'd start off by just noting what our opposing counsel has just stated in the number of people should this be applied retroactively. Prior to this administration, reasonable fear reviews or reinstatement orders, I don't believe were as common. With the change in climate, the change in times, the circuit courts, district courts now are tasked with anybody who is detained after a reentry, and processed federally for a criminal reentry, all of those people fall under this new rule. I mean, isn't it by statute if you have a final order of removal and you've removed from the country and you reenter without authorization illegally, then your prior removal order is reinstated? I don't know that's a new policy. It seems to be statute. I apologize for that characterization of it. What I'm trying to provide the court is context. The number of people that would be affected by this is often to change. As the opposing counsel mentioned, he doesn't have a number, but this would affect a large number of people, given that final orders of removal may have been years in the past, and now with their inability to challenge them, we'd be waived. Without challenging the final order of removal, judicial review would be waived. If we were to accept your argument, does this mean that someone could repeatedly reenter and bring up new actual allegations about their treatment in their home country and do it over and over again? If that were to occur, Your Honor, they would always be processed on the prior order. They would likely have the same outcome. For purposes of this argument, if their cat claim were different each time, then everybody would have a duty to assess their claim under the new facts. But if the cat claim were to remain the same, I believe the result would be the same. They wouldn't be prejudiced by it. But if it were a new assessment of facts, then again, they would have to challenge not only that set of facts, but also challenge the final order of removal. The opposing counsel said there he identified two statutes that would raise this scenario. One is 1231A5, which is a reinstated removal order, which is Mr. Navarrette's position. So as I understand it, if you are subject to a reinstated order of removal, you can make a reasonable fear claim. And if it's deemed valid or positive, then you could have withholding only proceedings. But those proceedings would not be appealable to the BIA. Instead, we had in our circuit precedent that I believe has been overruled by Nasrallah, that said you could appeal it to us, but not to the BIA. So the other route was 1228, which is when a final administrative removal order was entered for someone who committed certain aggravated felonies. Now, is it the same for people on that path? Do they also have the option of asking for a reasonable fear hearing and then trying to go into withholding only proceedings? And if they take that path, they don't have an appeal to the BIA. These are, in other words, both of these paths are somewhat expedited and streamlined processes. Do I have that right? That is correct, Your Honor. They wouldn't have an appellate review at the BIA. It would have to go directly to the Ninth Circuit or to the circuit court in which they are found. But only after challenging the final order of removal. Because if they don't, again, in Riley, if they don't challenge that final order of removal, then they don't get appellate review of their relief claim. Okay. Thank you. I think we've taken you over time again. Let's see if my colleagues would like to ask you anything else. Seeing no further questions. All right. Thank you. Thank you. Counsel, thank you both for your arguments this afternoon. They were helpful. And this case is submitted. And we are adjourned. This court for this session stands adjourned.
judges: HAWKINS, CLIFTON, BADE